Laura **QUILLEN**, Appellant,

v.

**INTERNATIONAL PLAYTEX,
INC.,** Appellee.

No. 84–2330.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 8, 1985.
Decided April 24, 1986.

Timothy W. McAfee (Cline, McAfee & Adkins, Norton, Va., on brief), for appellant.

William H. Robinson, Jr. (Lucie Adele Baker, McGuire, Woods & Battle, Richmond, Va., Charles M. McCaghey, Glenn J. Pogust, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, on brief), for appellee.

Before WIDENER and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WIDENER, Circuit Judge:

This is an appeal by the plaintiff, Laura Quillen, in a diversity action against International Playtex, Inc. (Playtex), for personal injuries allegedly caused by one of Playtex's tampons. Miss Quillen alleged that Playtex negligently manufactured and negligently failed to warn her of the danger of developing toxic shock syndrome (TSS) through the use of Playtex Super Plus Deodorant Tampons. She also claimed that Playtex breached implied and express warranties and that Playtex was strictly liable in tort and for actual and punitive damages. The district court dismissed the strict liability count and, at the end of Miss Quillen's case, directed a verdict for Playtex on the counts for negligent manufacture, express warranty, and implied warranty of fitness for a particular purpose. It submitted to the jury the questions of failure to warn, implied warranty of merchantability, and punitive damages. The jury returned a verdict for Playtex on the remaining theories of liability, and Miss Quillen appealed. Plaintiff raises four separate issues on appeal, and we affirm.

In May 1983, Mrs. Margaret Quillen, Laura Quillen's mother, purchased a box of Playtex Super Plus Deodorant Tampons for her daughter from a store in Kingsport, Tennessee. It was undisputed at trial that the box in question contained an informational insert concerning the dangers of TSS and that Miss Quillen had not read that particular insert, although she had read similar Playtex inserts in the past.[1] Dur-

1. The informational insert was titled "Important Information about Toxic Shock Syndrome (TSS)," and provided in pertinent part:

There is a risk of TSS to all women using tampons during their menstrual period. TSS is a rare but serious disease that may cause death. The reported risks are higher to women under 30 years of age and teenage girls. The incidence of TSS is estimated to be between 6 and 17 menstruating women and girls per year.

You can avoid any possible risk of getting tampon-associated TSS by not using tampons. You can possibly reduce the risk of getting

ing her menstrual cycle in May, while at home in Gate City, Virginia, Miss Quillen began experiencing some minor symptoms associated with TSS. These symptoms became progressively worse until her parents brought her to a hospital in Kingsport, Tennessee. Upon examination, she was admitted to the hospital, and Playtex did not subsequently dispute that she did, in fact, have TSS.

At the end of plaintiff's case, Playtex moved for a directed verdict on all counts. During argument on this motion, it was admitted that there was no evidence of negligent manufacture. Miss Quillen contended, however, that there was evidence in the record as to Playtex's negligent failure to test its super absorbent tampons for their potential to cause TSS, and plaintiff sought to amend her complaint to include a negligent testing count. The district court directed a verdict as to the negligent manufacture, express warranty, and implied warranty for a particular purpose counts. Moreover, after consideration of the complaint in chambers, the district court determined that the complaint did not encompass negligent testing and refused to allow amendment of the complaint to incorporate such a count. Subsequently, the court submitted to the jury the issues relating to the negligent warning and implied warranty of merchantability, including the issue of punitive damages. The jury found for Playtex, and Miss Quillen appealed. On appeal, Miss Quillen raises four issues: (1) whether the district court committed reversible error by refusing to allow Miss Quillen to amend her complaint to incorporate a negligent testing count; (2) whether the district court committed reversible error by dismissing Miss Quillen's strict liability count;

(3) whether the district court committed reversible error by excluding as irrelevant certain internal memoranda from Playtex's office that Miss Quillen had proffered; and (4) whether the district court committed reversible error in jury instructions. We consider these alleged errors separately below.

Plaintiff first contends that the district court should have allowed her to amend her complaint at the end of her case to add a count of negligent testing. In support of her argument, she relies on Rule 15(b) of the Federal Rules of Civil Procedure. Rule 15(b) provides that a district court shall allow amendment to a complaint if the issues not raised in the pleadings have been tried by the parties' express or implied consent. The district court in this case determined that there was no consent to a trial on the issue of negligent testing, implied or otherwise, and its determination in this regard is subject to reversal on appeal only for an abuse of discretion. *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir.1984). It is undisputed that Playtex did not expressly consent to a trial on the issue of negligent testing so the question before us is whether the district court correctly determined that there was no implied consent. We conclude that it did.

The argument goes that by failing to complain that her discovery and presentation of evidence relating to negligent testing exceeded the scope of her complaint, Playtex implicitly consented to a trial on that issue. Thus plaintiff contends the district court had no choice but to grant Miss Quillen's motion to amend her complaint under Rule 15(b). The district court, however, considered these same arguments

---

TSS during your menstrual period by alternating tampon use with sanitary napkin use and by using tampons with the minimum absorbency. Playtex makes Regular absorbency tampons for lighter flows and Super and Super Plus absorbencies for heavier flows.

If you have had warning signs of TSS in the past, you should check with your doctor before using tampons again.

Information about TSS on the package and in this insert are provided by Playtex in the

public interest and in accordance with the Food and Drug Administration (FDA) tampon labeling requirements. TSS is believed to be a recently identified condition caused by a bacteria called staphylococcus aureus. The FDA does not maintain that tampons are the cause of TSS. The FDA recognizes that TSS also occurs among nonusers of tampons.

If you have any questions about TSS or tampon use, you should check with your doctor.

1044

in deciding to deny the request to amend, and concluded that the evidence that plaintiff had discovered and presented that was relevant to the question of negligent testing primarily went to the pleaded question of punitive damages. It also mentioned warning. Because the complaint did not contain any claim for negligent testing, and because the proof that plaintiff had presented was relevant to the issue of punitive damages, the district court concluded, and we agree, that the defendant would have been caught unaware had the court allowed Miss Quillen to amend her complaint, and required Playtex to defend against a claim for which it was unprepared. The case was simply not tried on that basis. Playtex, for example, did not separately contest that issue although it is obvious it might have. Plaintiff cannot predicate her claim for appellate relief from the district court's determination on this issue on the fact that the evidence in question was relevant to an unpleaded negligent testing claim as well as to the punitive damage issue in the well pleaded claims. As we have held before, a court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim. *McLeod v. Stevens,* 617 F.2d 1038, 1040–1041 (4th Cir.1980); see also 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1493, at 466 (1971). Consequently, we conclude that the district court did not abuse its discretion in refusing to allow plaintiff to amend her complaint.

Miss Quillen's second contention is that the district court committed reversible error by dismissing her strict liability count. The argument on this point raises an issue of conflicts of law. In dismissing the strict liability count for failure to state a cause of action, the district court below applied the substantive law of Virginia, which, as Miss Quillen properly acknowledges, has not recognized strict liability in tort. See *Matthews v. Ford Motor Co.,* 479 F.2d 399, 401, n. 2 (4th Cir.1973). Plaintiff contends that the district court should have applied Tennessee law, which does recognize strict

liability in tort. *Ford Motor Co. v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240, 248 (1966). We disagree.

Miss Quillen agrees that in a diversity action a federal district court is bound to apply the conflicts of law rule of the forum State, in this case Virginia, to determine which State's substantive law governs the action. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). She also agrees that the Virginia Supreme Court has consistently held that it is the place of the wrong (lex loci delicti) that determines which State's substantive law applies in a tort action brought in Virginia. *McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662 (1979). Miss Quillen contends, however, that the district court erroneously considered Virginia the place of the wrong, instead of Tennessee. She emphasizes that she purchased the box of tampons in question in Tennessee, thereby placing the product in the stream of commerce in that State, and that she was hospitalized in that State. The place of the wrong for purposes of the lex loci delicti rule, however, is defined as the place where "the last event necessary to make an act liable for an alleged tort takes place." *Miller v. Holiday Inns, Inc.,* 436 F.Supp. 460, 462 (E.D. Va.1977). In this case, Miss Quillen's cause of action for strict liability would have arisen when she first became ill at her home in Gate City, Virginia. See VA. CODE § 8.01–230 (1984) (in personal injury case cause of action accrues the date injury is sustained). Thus, the district court correctly considered Virginia to be the place of the alleged wrong and properly applied Virginia law in its consideration of Playtex's motion to dismiss. Because Virginia has not recognized strict liability in tort, the district court properly dismissed Miss Quillen's strict liability count for failure to state a cause of action.

Plaintiff also raises certain questions as to the propriety of certain evidentiary rulings that the district court made in which the court excluded several of her

proffered exhibits. The evidentiary contentions fall into two categories. First, she contends that the trial court erroneously excluded exhibits relating to vaginal ulcerations and sloughing of tampon fibers. The district court noted that Miss Quillen did not experience any vaginal ulcerations in connection with her injuries and that there was no evidence of any sloughed tampon fibers in her vagina when she developed TSS, and excluded these exhibits as irrelevant, overly prejudicial to the defendant, and raising burdensome issues with no bearing on the present case. We agree. Evidence relating to vaginal ulcerations and sloughing of tampon fibers in other women was relevant only if the plaintiff established that the circumstances under which she sustained her injuries were substantially similar to those described in the excluded exhibits. Because her injuries were not relevant to vaginal ulcerations or sloughing of fibers, we reject the claim that the district court's decision to exclude these documents as irrelevant constituted an abuse of discretion. Such a determination of relevance was within the discretion of the trial judge. *United States v. Scholle,* 553 F.2d 1109, 1124 (8th Cir.1977).

■ Second, appellant contends that the district court erroneously excluded an interoffice memorandum from H.B. Auerbach, Director of Quality Assurance at Playtex, to Irwin Butensky, Director of Research and Development at Playtex. In this memorandum Auerbach discussed Playtex's decrease in market share due to its change in tampon composition to super absorbent materials, a change that caused, according to Auerbach, discomfort to users.

The district court excluded the exhibit as irrelevant, and we do not consider this determination to be an abuse of discretion. The document almost solely concerns the marketing of Playtex tampons and the effect that the change to super absorbent tampons has had on Playtex's market share. Although taken out of context, certain statements in the document might indi-

cate some knowledge on Playtex's part of a safety problem with its super absorbent tampons, when read in context, it is clear that the memorandum was referring solely to marketing problems, not safety problems, and certainly not to TSS related problems. Because the excluded memorandum did not relate in any way to TSS, we conclude that the district court did not abuse its wide discretion by excluding it. *Scholle,* supra.

The final point raised on appeal is that the district court erroneously instructed the jury because it gave finding instructions for the defendant but none for the plaintiff.

■ We start with the premise that a defendant is ordinarily entitled to a finding instruction on each defense and that, as well, a plaintiff is entitled to a finding instruction on his theory of the case. The plaintiff, however, points to no errors of law in the instructions given by the district court, and we thus conclude that the court did not err in its statement of the legal principles involved.

■ We have considered the instructions as a whole, *Chavis v. Finnlines Ltd O/Y,* 576 F.2d 1072, 1076 (4th Cir.1978), and believe they fairly and adequately state the pertinent legal principles involved. In view of that, although the better practice would have been to favor each side with finding instructions if it so favored the other, stating their respective theories of the case, we are unable to say that prejudice resulted, see *Palmer v. Hoffman,* 318 U.S. 109, 116, 63 S.Ct. 477, 481, 87 L.Ed. 645 (1943), and that omission of the same was reversible error.[2]

The judgment of the district court is accordingly

AFFIRMED.

---

**2.** The record on appeal does not disclose that        the plaintiff offered finding instructions.